PETER E. LEMBESIS, ESQ.,
 NJ Attorney ID #031952006
DUNN LAMBERT, L.L.C.
The Atrium
East 80 Route 4
Paramus, New Jersey  07652
Tel:    (201) 291-0700
Fax:    (201) 291-0140
HCohen@NJBizlawyer.com
PLembesis@NJBizlawyer.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT D.H. REDMAN, individually and on behalf of others similarly situated,<br><br>Petitioner,<br><br>v.<br><br>CAPITAL ADVANCE SOLUTIONS, LLC, a New Jersey limited liability company,<br><br>Respondent. | Civil Action No. 17-4531 (PGS) |

## PETITIONER'S SECOND NOTICE OF DEFICIENCIES

Petitioner Scott D.H. Redman ("Petitioner"), by and through his attorneys, states as follows for his second notice of deficiencies remaining in Respondent Capital Advance Solutions, LLC's ("Respondent") subpoena responses.

1.  Despite being given the chance to produce documents responsive to a subpoena at the time the subpoena was issued, and despite being given the chance to do so *twice* since this enforcement action was filed, Respondent acknowledges that it allowed evidence to disappear and still has not produced responsive documents.

2. Petitioner incorporates its prior filings in this matter herein, so as not to restate the history and law applicable, particularly as to Respondent's waivers of objections and clear case for imposition of a contempt finding.

3. Respondent has submitted another Certification of Dan Logan [DE 14], which merely restates the same baseless excuses for not complying with Petitioner's subpoena, yet acknowledges that Respondent did nothing to preserve or obtain responsive documents.

4. For starters, Mr. Logan attempts to give the impression that he Respondent is a one-man "mom-and-pop" operation, despite that Respondent also boasts of having funded more than $138,100,000 to more than 8,860 businesses. *See e.g.*, www.capitaladvancesolutions.com (last visited November 10, 2017). It also continues to claim that it has two offices, one in Middletown and one in West Atlantic City. *Id*.

5. Indeed, it is entirely unclear why Mr. Logan is providing a certification at all, considering much of the information sought is likely electronic and the person thus best able to answer Petitioner's inquiries (and, in fact, the person that likely should have been looking for responsive documents) is Chetan Gadhiya, Respondent's Director of Information Systems. *See* **Exhibit 1** hereto.

6. The crux of Mr. Logan's certification is twofold, namely that: (a) Respondent was not required to "undertake any investigation" until it was served with a subpoena; and (b) he claims to have checked "all available paper files, electronic files, and email." *See* Certification of Dan Logan in Further Response to Petitioner's Alleged Deficiencies ("Certification") [DE 14], at ¶ 2. Mr. Logan is wrong as to the former and, at best, contradictory with respect to the latter.

**Spoliation**

7. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. Spoliation occurs when a party has intentionally or negligently breached its duty to preserve potentially discoverable evidence.... Sanctions for spoliation include: dismissal of a claim or granting judgment in favor or a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 519 (D.N.J. 2008) (internal quotations and citations omitted).

8. "An independent duty to preserve relevant evidence arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded." *Id.* at 518.

9. "In determining whether spoliation sanctions are appropriate, the two key considerations are the 'degree of fault of the party who altered or destroyed the evidence' and 'the degree of prejudice suffered by the opposing party.'" *Id.* at 519 (*quoting Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).

10. Here, while Respondent disclaims any duty to investigate until the subpoena was served in April 2017, Petitioner sent it a request for waiver of summons *a year prior*, on April 18, 2016 (first notice of suit), and was formally served with process on June 8, 2016 [DE 10 in underlying case]. Furthermore, though Judge Blakey in the Northern District of Illinois ultimately deemed Respondent to be a non-party because it had not appeared in the underlying case, Responded was served with discovery requests on August 22, 2016 and reissued discovery requests on November 1, 2016. *See* **Exhibits 2 and 3** hereto. Petitioner's counsel also followed

3

up with Respondent by email and phone seeking responses, to no avail. *See* emails dated October 7, 2016 and December 12, 2016, included herewith as **Exhibits 4 and 5**, respectively.

11. As such, Respondent has long known of this case and the issues raised and has long had a duty to preserve relevant evidence.

12. If that evidence no longer exists, it is because Respondent allowed it to be destroyed. Notably, Mr. Logan does not claim that the evidence never existed, simply that Respondent does not currently possess it.

13. That evidence, including information related to Petitioner and the putative class, Respondent's lead generators, Respondent's lead generation practices and call records, is plainly relevant to this case and its absence is plainly prejudicial to Petitioner.

14. Respondent's failure to preserve the evidence will likely preclude Petitioner from certifying a class and proving class claims in the underlying case. Much like Respondent's failure to participate in the underlying case, Respondent's failure to preserve relevant evidence is aimed at precluding a class judgment against it.

15. Therefore, this Court should find Respondent in contempt and sanction Respondent for failure to comply with Petitioner's subpoena, including awarding Petitioner's attorneys' fees and costs.

**Inadequate Search**

16. Respondent's supposed efforts at retrieving relevant evidence are a farce.

17. Mr. Logan claims to have undertaken "every effort to respond to each of the Petitioner's requests," *see* Certification, at ¶ 13, but he does not specify what that is (despite multiple requests by Petitioner for same). He claims to have "searched all available paper files, electronic files, and email," *id.* at ¶ 2, but that assertion is entirely uninformative. Mr. Logan

4

fails to identify what files were available. Absent greater specificity, there is no reason to believe he did anything more than perform a cursory search of his own desk and email account.

18. He does not identify what paper files he allegedly searched. For example, he does not state where he looked, whether others looked, whether he looked in both offices of the company, or whether he looked in storage files.

19. He does not identify what electronic files he purportedly searched. Respondent is a company that, by its own admission, has funded in excess of $138 million dollars in loans and has a Director of Information Systems, but Mr. Logan does not give any insight into what search process he used. We know that Respondent has customer relationship management software (as evidenced by Petitioner's information from prior contacts being available to Respondent when another of Respondent's employees subsequently called him), but Mr. Logan does not mention it. Petitioner previously identified this low-hanging fruit as a place to look for documents, but Mr. Logan still does not mention it. His current claim of "diligence" is simply incredible.

20. Mr. Logan initially claims to have searched email, *see* Certification, at ¶ 2, but then later claims that Respondent does not have an internal email system, *id.* at ¶ 9. The logical connection is that Mr. Logan's claim he searched "available" email is illusory, given that Respondent's email system is non-existent, and that he found nothing as a result of such search because there was nothing to find.

21. Mr. Logan fails to identify any effort or process used to find responsive documents. He does not state that he spoke with other employees, current or former (all of whom remain unidentified to Petitioner), other officers (similarly unidentified), vendors (also unidentified), lead generators (inadequately identified), or anybody else.

22. Therefore, this Court should, respectfully, find Respondent in contempt and sanction Respondent for failure to comply with Petitioner's subpoena, including awarding Petitioner's attorneys' fees and costs.

**Remaining Deficiencies**

23. Given that Mr. Logan largely recycled his initial certification, it is no surprise that the same deficiencies that plagued Respondent's subpoena response remain.

24. Respondent still produced nothing related to Petitioner, and actually disclaims having such documents, despite Petitioner attaching examples of such documents to its submissions in this matter. The temerity to claim that documents do not exist <u>while looking at such documents</u> is astounding.

25. Respondent produced no information or documents regarding its lead generators. It names two (Certification, ¶ 6) -- without providing full entity names, addresses, or other information -- and provides no information about any of the others.

26. Mr. Logan claims his vetting process was a "statistical analysis" of complaints. *Id.*, ¶ 4. First, there is nothing to suggest that was an actual statistical analysis (as opposed to a mere facile comparison of two numbers). Second, what he describes is not vetting. Vetting is a detailed pre-screening process, not letting one's agents roam unchecked and then apologizing later for their inevitable errors.

27. Respondent's insubstantial claim of vetting is particularly galling in light of its efforts to disclaim control over the unlawful activities of its agents. Respondent, in fact, had control as it had the opportunity to insure that its vendors would, and did, comply with federal law. Their efforts to disclaim responsibility are a transparent mask for, at best, willful ignorance (and likely actual knowledge of their agents' conduct).

28.   Mr. Logan then contradicts his claim of blind ignorance as to Respondent's lead generators' processes with the clear hearsay statement that "lead generators used their own names when calling." *See* Certification, at ¶ 5. That claim also contradicts Petitioner's testimony and the plethora of Better Business Bureau complaints against Respondent.

29.   Mr. Logan also fails to state that Respondent made any effort to obtain any responsive documents from its agents, *i.e.*, lead generators.

30.   Respondent claim that Petitioner did not request payment records related to lead generators, *see* Certification, at ¶ 7. Petitioner did, in fact, request all agreements and/or contracts with lead generators. Payment records would reflect such information. Additionally, Respondent addressed the payment records in Mr. Logan's first certification.

31.   Mr. Logan again claims that Respondent has no relevant phone records, but only speaks to the records of its third-party lead generators. *See* Certification, at ¶ 8. First, despite Respondent's claim, Petitioners is not "well aware that the Respondent purchased leads a la carte," because Respondent has not produced anything showing this. Second, Respondent still has not produced its *own* phone records, which may show incoming calls (thus, depending on the technology used, revealing lead generators and people called on Respondent's behalf). Third, Respondent's own records would reveal its customers and potential customers (i.e. those contacted but who may not have closed a deal with Respondent) who were contacted in violation of the TCPA. Fourth, though Petitioner did not expressly ask for the identity of Respondent's phone carrier (because that is more of an interrogatory to a party, rather than a document request), he did ask for all documents related to calls, which Respondent still refuses to produce. Disclosing the carrier would at least allow Petitioner to subpoena the carrier for the records. Of

course, the request of Petitioner is perfectly reasonable, and this Court should, respectfully, compel production of the records from Respondent.

33. Mr. Logan contends that Petitioner did not request emails, *see* Certification, at ¶ 9, but Petitioner ask for "all Documents" in various categories, and emails are included in the definition of "Documents." Mr. Logan's claim that he exerted "every effort" to find responsive documents is belied by the fact that Respondent's emails to Petitioner are literally ongoing, as set forth in Petitioner's prior notice of deficiencies. Additionally, Mr. Logan claims that Respondent has no control over its email vendor, which is utterly ridiculous. Email is a mainstay of the business world, yet Mr. Logan actually advances the preposterous argument (which, if contained in a pleading signed by counsel, would potentially implicate Rule 11) that it has no control over its emails and whether they are preserved or deleted. Finally, Respondents fails to identity its alleged email vendor, thus creating yet another barrier to the requested information, as it did with its phone carrier.

33. Mr. Logan claims that Respondent has no "correspondence from Mr. Redman," *see* Certification, at ¶ 10, but that is an extremely limited statement, given that Petitioner requested all documents *related to* (and not merely *from*) Petitioner. As set forth above and previously, such records exist, because Petitioner himself appended them to prior filings. Missing is any explanation of why Respondent has not produced them and other records, particularly from its customer management software.

34. Respondent still has not identified any of its employees, claiming it objected to the request. *See* Certification, at ¶ 11. As previously argued, Respondent waived any objections. Mr. Logan claims now to be willing to produce names and addresses of former employees, *id.*, but Respondent still has not done so here (or explained its failure to do so). Additionally, it is

8

incredible for Mr. Logan to claim that Respondent does not have telephone numbers and email addresses for former employees.

35. Respondent still refuses to produce financial records and business plans, claiming that this Court determined that it did not have to produce such records. *See* Certification, at ¶ 12. Such a statement by Mr. Logan is hearsay, as he was not on any call with this Court. Nonetheless, while Petitioner does not have a transcript of the hearing with this Court, the undersigned counsel does not recall that determination being made, and it is not reflected in this Court's Orders. In any event, those records are important and relevant, because they will provide operational information about Respondent, including its claimed business, how it goes about its business, what it disclosed to governmental entities about whether it makes sales calls and how, who its alleged vendors are, and who its employees are (and what their roles are).

36. In the end, the only relevant documents Respondent has produced are an alleged TCPA compliance directive with an unnamed alleged vendor (while having claimed to have no control over telemarketing) and incomplete Better Business Bureau complaints. It simply strains belief that these documents are the sum total of Respondent's business practices and numerous contacts with Petitioner.

37. Finally, while Respondent disclaims any affiliation with telemarketing and use of autodialers, Charles Betta, Respondent's apparently now former president, testified that Respondent was in the business of making telemarketing calls using predictive dialers. *See* Transcript of Deposition of Charles Betta, included herewith as **Exhibit 6**.

WHEREFORE, for the foregoing reasons, Petitioner respectfully requests that this Court enforce the subpoena as follows:

 A. Find Respondent in contempt of court for failure to comply with the subpoena;

 B. Compel Respondent to produce the documents requested in the subpoena;

 C. Award Petitioner his attorneys' fees and costs incurred in seeking compliance with the subpoena; and

 D. Grant such other relief as this Court deems proper.

       SCOTT D.H. REDMAN, Petitioner

   By: /s *Peter E. Lembesis*
     Petitioner's Attorney